UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| CHRISTOPHER NALLS, | ) | |
| Plaintiff, | ) | |
| vs. | ) | CV 98-J-2850-J |
| SHERIFF JAMES TURNER, et al., | ) ) | |
| Defendants. | ) ) | |

**ENTERED**
OCT 26 2001

## MEMORANDUM OPINION

This cause comes before this court on defendants' motions for summary judgment (docs. 60, 63), evidentiary materials in support of their motions (docs. 62, 64), and memoranda of law. The plaintiff submitted a brief in opposition, to which the defendants submitted reply memoranda. The court has reviewed the motion, the memoranda of law, and the evidentiary submissions of the parties.

### I. Procedural History

Plaintiff commenced this action *pro se* on November 13, 1998 by filing a complaint (doc. 1) in which he named the Fayette County Commission and the Fayette County Sheriff's Department as defendants. On July 20, 2000, United States Magistrate Judge Robert R. Armstrong, Jr. entered an order allowing plaintiff to amend his complaint (doc. 21). On August 25, 2000, plaintiff, with counsel, filed an amended complaint (doc. 24)

naming Sheriff James Turner, Chief Deputy Vernon "Butch" Hudson, and Deputy Sam Striegal as defendants. The Fayette County Commission and Fayette County Sheriff's Department were not named as defendants.

Plaintiff brings a failure to protect claim and a denial of adequate medical treatment claim against defendants. Plaintiff has sued defendants in their official and individual capacities under the Fourth and Fourteenth Amendments to the United States Constitution.[1] The plaintiff states claims under the Eighth Amendment to the United States Constitution. Upon consideration of the pleadings, briefs, and evidentiary submissions, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II. Factual Background

Plaintiff was incarcerated at the Fayette County Jail in January 1998 due to a parole violation for forgery. Plaintiff was placed in the prison's day room, which served as his cell.

On January 13, 1998, while in his "cell," the plaintiff began yelling at Fletcher Williams, another inmate. There had been no previous disputes between plaintiff and Williams. When Kenny Shirley, a prison trustee, opened the door to plaintiff's cell, inmate Williams charged towards plaintiff. A fight between the two ensued. Upon hearing of the

---

[1] The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. The Fourteenth Amendment guarantees due process. Plaintiff does not allege an unreasonable search and seizure, nor does he allege he did not receive process he was due. Plaintiff was an inmate, not a pre-trial detainee. The court will evaluate the merits of plaintiff's claims under the Eight Amendment to the United States Constitution. *See, e.g. Estelle v. Gamble*, 429 U.S. 97 (1976).

2

altercation, Sam Striegal, Deputy Sheriff and jailer, as well as Vernon "Butch" Hudson, Chief Deputy Sheriff, ran upstairs and broke up the fight.

According to inmate Shirley the fight lasted less than one minute. When the fight ended the tempers of both Williams and plaintiff remained inflamed. The deputies then placed plaintiff into a single-person cell. As a result of the fight, plaintiff had a bloody nose and some bruises. Plaintiff continued to bleed after he had been placed in the cell. The amount of blood lost by plaintiff is in dispute. Some time later, plaintiff requested medical treatment and was taken to the Fayette County Hospital emergency room.

At the emergency room, the attending physician, Dr. Garry Magouirk, noted plaintiff had a fractured nose, bruises, abrasions, and lower back pain. X-rays were used to determine if plaintiff's nose was broken. The doctor wrote prescriptions for plaintiff to help with the pain and swelling. Plaintiff alleges that while at the hospital, the prescriptions were given to Deputy Jenkins, who was with plaintiff. Plaintiff and Jenkins then returned to the prison. Plaintiff claims that his prescriptions remained unfilled for three to four days following his return to prison. Plaintiff states that his wife eventually filled his prescriptions, though it was the responsibility of J. Warren (or Jay Warner), Chief Jailer, to do so.

Plaintiff avers that he had ongoing back pain from injuries stemming from the fight. He stated that at numerous times he requested medical attention for his back, yet received none. Plaintiff alleges that there were numerous times when, from his cell, he would see Sheriff Turner in the parking lot. From his cell, plaintiff would yell at the Sheriff and tell him his back hurt. Some four months after the fight, plaintiff went to see Dr. H. Chester

Boston. Dr. Boston stated plaintiff had a myoligamentous injury of the lumbar spine, which according to Dr. Boston means an injury to the muscles and ligaments of the lower back. Dr. Boston opined that a five month delay in plaintiff's treatment created no risk of permanent, serious damage.

### III. Standard of Review for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. P. 56(e). In meeting this

burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587. *See also Anderson v. Liberty Lobby*, 477 U.S. at 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. SH. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson,* 477 U.S. at 248. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## IV. Legal Analysis

The plaintiff brings claims under 42 U.S.C. § 1983 for failure to protect and denial of adequate medical care against defendants in their official and individual capacities.

### A. Official Capacity[2]

"A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity ... or Congress has abrogated the state's immunity." *See Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997); *Carr v. City of Florence*, 916 F.2d 1521 (11th Cir. 1990). Alabama has not waived its Eleventh Amendment immunity and Congress has not abrogated it. *See Lancaster* 116 F.3d at 1429. Additionally, state officials are not "persons" subject to suit under § 1983 when acting in their official capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Sheriffs, their deputies, and jailers are state officials under Alabama law. *See Lancaster*, 116 F.3d at 1429-30. Therefore, defendant Streigal is immune from suit in his official capacity.

### B. Failure to Protect

"Prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). However, not every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety. *Farmer*, 511 U.S. at 834. For a claim based on

---

[2]The court has previously dismissed the claims against defendants Turner and Hudson in their official capacities. Thus, this claim remains solely against defendant Striegal. *See* Order of January 9, 2001 (doc. 52).

6

a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm and that the prison official disregarded the risk by failing to take reasonable measures to abate it." *Id.* at 834-835.

There were no prior incidents of violence between plaintiff and Williams. Plaintiff noted that the inmates felt no animosity towards each other. Immediately before the fight, Williams and other inmates were heading to Bible study when plaintiff began yelling at Williams. The plaintiff started the fight, and defendants Hudson and Striegal broke it up within a minute. Plaintiff cannot show that defendants had knowledge that plaintiff faced a substantial risk of serious harm, and he cannot show deliberate indifference on the part of defendants. *See Farmer v. Brennan*, 511 U.S. at 847 (holding that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it"); *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (requiring deliberate indifference to a known danger for a failure to intervene to rise to the level of a constitutional tort).

## C. Denial of Medical Care

Deliberate indifference to [a prisoner's] serious medical needs is proscribed by the Eighth Amendment's prohibition against cruel and unusual punishment. In *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994). A two-part analysis is employed in determining whether an Eighth Amendment violation has occurred. "First, we evaluated whether there was evidence of a serious medical

7

need; if so, we must consider whether [the defendants'] response to that need amounted to deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989). The first inquiry is objective, the second inquiry is subjective. *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994).

"A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill*, 40 F.3d at 1187.

Whether the response of defendants amounted to deliberate indifference is itself a two-part determination. A defendant may be liable for an Eighth Amendment violation only if he had knowledge of the plaintiff's particular medical condition, and he acted intentionally or recklessly to deny or delay access to medical care or to interfere "with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05; *Hill*, 40 F.3d at 1191. *See also Mandel*, 888 F.2d at 788. Mere negligence or medical malpractice will not suffice to support an Eighth Amendment claim. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). "Nor does a simple difference in medical opinion between prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." *Id.*

Plaintiff's amended complaint alleges that he was denied medical treatment following the fight. After the altercation between plaintiff and Williams ended, defendants Hudson and Striegal placed plaintiff in a single-person cell. Plaintiff had a bloody nose at the time. Plaintiff alleges the deputies gave him an ice pack for his nose and summoned Sheriff Turner

to speak with him. Plaintiff alleges that Sheriff Turner asked him if he needed medical attention.[3] Nalls Deposition at 25. Plaintiff replied "I need medical attention tonight." *Id.* The plaintiff was taken to Fayette County Hospital within 35 to 45 minutes.

Dr. Garry Magouirk treated plaintiff in the emergency room. Dr. Magouirk noted dried blood in plaintiff's right nostril as well as several superficial abrasions. *See* Declaration of Garry W. Magouirk, M.D. Plaintiff complained of pain across the nose, and an x-ray revealed that plaintiff's nose was fractured. Plaintiff's injuries do not rise to the level of a serious medical condition because they were not "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill*, 40 F.3d at 1187. Dr. Magourik did not find the plaintiff's injuries to be serious. *See* declaration of Dr. Magouirk at ¶ 4. Additionally, when asked by plaintiff to provide medical attention, Sheriff Turner and his deputies took plaintiff to the emergency room where he received treatment. The plaintiff cannot show deliberate indifference. *See generally Farmer v. Brennan*, 511 U.S. 825 (1994)

Plaintiff further alleges that defendants failed to fill his prescriptions[4] and failed to provide him with medical care for his back. "The 'seriousness' of an inmate's medical needs also may be decided by reference to the *effect* of delay in treatment." *Hill*, 40 F.3d 1188 (emphasis in original). "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the

---

[3]Streigel states that he was the one who spoke with plaintiff and reported to Turner.

[4]Plaintiff states that deputy Jenkins was given the prescriptions at the emergency room. However, plaintiff's wife filled the prescriptions three or four days later. The record is unclear how plaintiff's wife acquired the prescriptions.

detrimental effect of delay in medical treatment to succeed." *Id.* Here, the evidence shows that defendants' alleged delays did not result in a detrimental effect on plaintiff's condition. *See* Plaintiff's medical records, Striegal's Exhibit 8; Declaration of H. Chester Boston, M.D. at ¶ 9. Therefore, plaintiff has shown no injury from waiting three or four days for the prescriptions to be filled

Even if plaintiff had shown a constitutional violation, plaintiff cannot show the defendants acted with deliberate indifference as he received requested medical treatment and his prescriptions were filled within a reasonable time[5] Plaintiff also received treatment for a non-serious injury to the muscles and ligaments in his back from Dr. Boston. This court can find no deliberate indifference to plaintiff's serious medical needs.

Finding no genuine issues of material fact, the court finds that defendants' motions for summary judgment (docs. 60, 63) are due to be **GRANTED**. Judgment shall be entered on behalf of the defendants.

**DONE** and **ORDERED** this 27 day of October 2001.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

---

[5]Plaintiff stated that once the prescriptions were filled, he received his medication regularly. Nalls Depo. at 62.

10